## Irwin, Appellant, v. Monongahela Consolidated Coal and Coke Company.

*Executors and administrators—Sale of land for payment of debts —Purchase by executor—Trusts and trustees—Recitals—Estoppel.*

Where by the will of testatrix a farm was devised to her three grandsons subject to a life estate in their father who was named as executor, and eight years after the admission of the will to probate the executor under an order from the Orphans' Court sold the land in question for the payment of debts and secured an immediate reconveyance of the same to himself from the purchaser at the sale, the presumption is that the executor bought the property as trustee for himself and sons for the purposes of the will, which presumption becomes conclusive as against his successors in title when it appears that twenty-six years after the sale the executor purchased from one of his sons a one-third interest in the farm by a deed which recited that the interest purchased had been acquired by the son under his grandmother's will, and that later executor conveyed the one-third interest so acquired to another son by a deed reciting that the land conveyed was part of the tract bequeathed by the will and later by deed of his son conveyed to the executor grantor.

Argued October 30, 1912. Appeal, No. 207, Oct. T., 1912, by plaintiffs, from judgment of C. P. Allegheny Co., Third T., 1908, No. 976, on verdict for defendant in case of William D. Irwin, et al., v. The Monongahela River Consolidated Coal and Coke Company. Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Ejectment for coal underlying certain land in Forward Township.  Before MACFARLANE, J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for defendant.  Plaintiff appealed.

*Errors assigned* were various rulings on evidence and instructions to the jury.

*Jesse H. Wise,* with him *William E. Minor* and *Joseph W. Walters,* for appellants.

*William R. Murphy,* with him *Charles G. McIlvain, Charles M. Johnston and Fred W. Scott,* for appellee.

OPINION BY MR. JUSTICE BROWN, January 6, 1913:

The common source of title in this ejectment is Margaret Irwin.  The question of the right of the plaintiffs to recover was submitted to the jury, but the learned court below, in denying them a new trial, held that, under the record evidence in the case, a verdict ought to have been directed for the defendant.  As this was a manifestly correct conclusion, we need not discuss the assignments of error, complaining of the charge, rulings on offers of evidence and answers to points.  Margaret Irwin died seized of the land underlaid with the coal, for the recovery of two-thirds of which this ejectment was brought.  By her will, dated October 4, 1831, and admitted to probate June 15, 1835, she devised this land to her three grandsons, John Brady Irwin, Joseph Irwin and Henry Fulton Irwin, subject to a life estate in it which she gave to their father, John Irwin, whom she named as her executor and to whom letters testamentary were duly issued.  In 1843—eight years after the will of the testatrix had been admitted to probate—John Irwin, her executor, obtained an order from the Orphans' Court to sell the farm for the payment of the

debts of the testatrix, and he sold the same in pursuance of said order to James Wilson, to whom he executed and delivered a deed for the property on June 16, 1843. On the same day Wilson made a reconveyance to John Irwin, who thus became the real purchaser at the Orphans' Court sale. Twenty-six years afterwards —on June 22, 1869,—he purchased from his son, John Brady Irwin, the latter's interest in the land, a recital in the deed from the son to him being that the interest conveyed was the one-third of the farm that had been devised by Margaret Irwin to her three grandsons. A little more than a year later, by deed dated November 7, 1870, John Irwin conveyed this third interest to his son, William W. Irwin, born to him by a second marriage, and the recital in that deed is as follows: "Being the same tract of land which was bequeathed to John B., Joseph L. and Henry F. Irwin by the last will and testament of Margaret Irwin and bearing date the 4th day of October, 1831. And by deed of John B. Irwin conveyed to John Irwin, the present grantor. The said John Irwin, party of the first part, reserving to himself an estate for life in said described premises." On June 23, 1875, John Irwin undertook to convey the undivided two-thirds of the coal in controversy to his son, John B. Irwin, and it is under this deed that the appellants claim. On February 12, 1880, Joseph L. Irwin, one of the three grandsons of Margaret Irwin, conveyed to his half-brother, William W. Irwin, his one-third interest in the farm, and, under proceedings in the Orphans' Court, the one-third interest of the remaining grandson, Henry F. Irwin, deceased, was conveyed, September 9, 1881, by the guardian of his minor children to William W. Irwin. After the death of the latter, which occurred sometime prior to May 13, 1898, his executrix sold the coal which is the subject of this controversy to Robert Jenkins, Jr., who, in turn, conveyed it to the appellee. John Brady Irwin died about eighteen years before this action was brought, leaving to survive him as his heirs

at law the appellants, who now claim, by descent from him, two-thirds of the coal underlying the farm left by his grandmother, their title resting on the deed to him from his father. The case was submitted to the jury with instructions that if they should find that John Irwin, after his purchase of the property through Wilson at the Orphans' Court sale, took and continued to hold title to the farm under a claim of absolute ownership, and not as trustee for himself and sons, the verdict should be for the plaintiffs. That this was error the trial judge, as already stated, subsequently admitted, and he correctly held that the verdict ought to have been directed for the defendant. This is clear from the foregoing recitals taken from the records.

The court below held that the Orphans' Court had jurisdiction, eight years after the death of Margaret Irwin, to order a sale of her farm for the payment of debts. We need not pass upon that question, for, even admitting that the jurisdiction of the Orphans' Court had been validly exercised, for whom did Irwin become a purchaser? When he sold the farm as executor he was a life tenant on it, with remainder in his three sons, and, having purchased at his own sale, through Wilson, a straw man, the presumption is that he bought the property and held title to it for the benefit of those interested in it before it was sold: Church v. Winton, 196 Pa. 107. In applying this rule in Shuman's App., 27 Pa. 64, it was said: "It certainly is not necessary to decide now that an executor who buys at his own sale, or what is precisely the same thing, gets another to buy for him, holds the land on the same trusts that it was subject to before the sale." This was said often before and has been often repeated since. The presumption that John Irwin bought the farm as trustee for himself and sons, and that he understood that he so took title, becomes conclusive in view of his purchase from his son, John Brady Irwin, of the one-third interest in the farm twenty-six years after he had become the purchaser at

the Orphans' Court sale. If on June 22, 1869, he regarded himself as the absolute owner of the property, why did he pay his son $800 for a one-third interest in it and accept a deed which recited that the interest purchased had been acquired by the son, the grantor, under his grandmother's will? The only possible explanation of this transaction is that the father continued to recognize the title to the land after the Orphans' Court sale as being still in him merely for life, with remainder to his sons; and that he so regarded the title conclusively again appears in his deed for the one-third interest to his son, William, in which he recites that the interest he conveyed had been acquired by him from his said son, John B., whom he recognized as the absolute owner of it in 1869. The recitals in these deeds—the one accepted by John Irwin and the other executed and delivered by him—were confessions by him that he had not become the purchaser of the farm for himself alone, and these confessions bind those now claiming under him, for appellants' ancestor purchased with knowledge of the real condition of the title: Penrose v. Griffith, 4 Binney 231. As he would be estopped, they are estopped. John Irwin, through the deed of June 23, 1875, which he executed for a two-thirds interest in the coal to his son, John Brady Irwin, did not pass title to the same, for neither then nor at any other time was he the owner of it. No interest in it passed by his deed to the ancestor of the appellants. The undivided two-thirds of the same continued to be the property of the two sons, Joseph and Henry F., after the Orphans' Court sale, just as before, and the title to all of the coal having finally passed to William W. Irwin by valid conveyances, the appellee, having a record title from him, is safe from any assault upon it by the appellants. The assignments of error are all overruled and, for the reasons stated, the judgment on the verdict, in favor of the appellee, is affirmed.